HARTFORD FIRE INSURANCE COMPANY, Respondent, v MICHAEL ADVOCATE, Appellant.

Second Department, September 24, 1990

## APPEARANCES OF COUNSEL

*Irving N. Selkin* for appellant.

*Bouck, Holloway, Kiernan & Casey* for respondent.

## OPINION OF THE COURT

KUNZEMAN, J.

The main question presented on this appeal is whether an insurance company, which has paid an innocent partnership the proceeds of fire insurance policy for damages sustained in a fire which was intentionally set by a member of the partnership for personal reasons, may then seek subroga-

tion from the offending partner. Under the circumstances of this case, we answer that question in the affirmative and find that the Supreme Court properly granted the plaintiff insurance company's motion for summary judgment.

On July 5, 1983, the plaintiff Hartford Insurance Company (hereinafter the insurance company) issued an insurance policy to One-Five-Three Associates, a partnership, providing fire coverage for premises owned by the partnership located at 153 Main Street, Mount Kisco, New York.

Under a section entitled "Perils and Exclusions", the policy specifically excluded from coverage loss: "caused by pilferage, appropriation or concealment of any property covered or any fraudulent, dishonest or criminal act done by or at the instigation of any insured, partner or joint venturer". As to the insurance company's rights of subrogation, the policy stated that: "In the event of any payment under this policy, the Company shall be subrogated to all the insured's rights of recovery against any person or organization". The policy defined an insured, in the case of a partnership, as the partnership itself "and any partner or member thereof".

The defendant Michael Advocate, an attorney, was a partner whose interest in One-Five-Three Associates totaled 2.5% of the entity. He rented space from the partnership and maintained his law office at the insured premises. On October 31, 1983, the insurance company issued a separate fire insurance policy to him, insuring, *inter alia,* his personal property in his law office located at the subject premises.

On February 5, 1984, a fire occurred at the insured premises which substantially damaged the structure and its contents. On May 1, 1984, the partnership submitted a claim to the insurance company under the terms of its policy for loss of income and property damage. The claim form stated that the "cause and origin of the said loss were unknown to insured" and was signed by a general partner. The insurance company investigated the facts surrounding the fire and paid the partnership $332,183.09, which the partnership accepted in full satisfaction of its claim. After an initial installment payment for emergency repairs on March 8, 1984, the remainder of that amount was paid in four additional installments on July 30, 1984, July 31, 1984, February 19, 1985, and February 13, 1986, respectively.

The defendant Michael Advocate had also submitted a claim under his separate policy for property damage sustained to his

law office as a result of the fire. However, the insurance company rejected this claim on June 1, 1984, on the ground that there was evidence to show that Advocate had deliberately caused the fire.

The defendant Advocate then commenced an action against the insurance company on December 26, 1984, seeking to recover the proceeds of his policy and related damages allegedly sustained by reason of the insurance company's rejection of his claim. That action was tried in the Supreme Court, Westchester County, before a jury. The insurance company's evidence showed that Michael Advocate arranged for the fire as a means of destroying his business and personal records because he was then involved in a matrimonial lawsuit with his wife. Only days before the fire, his wife had brought a motion for pendente lite support. The issues were submitted to the jury in special interrogatories, and a unanimous verdict was rendered in favor of the insurance company. The jury affirmatively answered the question, "Did the plaintiff [Advocate] procure the setting of the fire?" By order and judgment entered March 28, 1988 (Marbach, J.), Michael Advocate's complaint in that prior action was dismissed.

On or about May 23, 1988, the insurance company commenced the instant action alleging, *inter alia,* that, as the fire was intentionally and deliberately procured by the defendant Michael Advocate, it was subrogated to the rights of the partnership against Advocate. It was also alleged that Advocate's acts constituted fraud. Issue was joined by service of an answer dated October 14, 1988, which denied all material allegations in the insurance company's complaint. Several defenses were set forth, including, *inter alia,* (1) that the cause of action for reimbursement was time barred as it was interposed more than four years after the occurrence and payment of the claim, and (2) since Advocate is a general partner as well as limited partner of the insured partnership, no right of subrogation arose in favor of the insurance company against him.

Thereafter, the insurance company moved for summary judgment based, *inter alia,* upon its investigation which had revealed that the fire at the insured premises had been set by Michael Advocate. The defendant Advocate cross-moved for summary judgment dismissing the complaint on the grounds, *inter alia,* that the insurance company, by voluntarily paying the partnership's claim, had waived any rights to subrogation as a matter of law, and, having done so with

knowledge of the true facts, there was no reliance by it on any misrepresentations, therefore no fraud.

By order entered March 9, 1989, the court (1) granted the plaintiff's motion for summary judgment to the extent of awarding summary judgment as to liability, (2) directed an inquest as to damages, and (3) denied the defendant's cross motion for summary judgment dismissing the complaint. After an inquest, judgment was entered on June 22, 1989, in favor of the insurance company in the principal sum of $332,183.09, the exact amount which it had paid to the partnership on its claim.

On appeal, Advocate contends that the insurance company was not obligated to pay the partnership claim since the fire insurance policy contained a specific exclusion of liability where the insured, which included a partner of the partnership, procured the fire. Since the insurance company had a clear and valid defense to the claim by the partnership under the express provisions of the policy, Advocate argues that it is not entitled to be subrogated to the rights, if any, of the partnership. Advocate also argues that the insurance company has no right of subrogation against him, since he, as a general and limited partner of the insured partnership, was an insured himself.

First, we must determine whether the insurance company properly paid the partnership's claim under the partnership's insurance policy. Although Michael Advocate, as a member of the partnership, is an insured as defined in the partnership's policy, he was not acting within the scope of partnership business when he arranged for the fire. "Generally speaking, the determination of the question whether an innocent coinsured may recover on fire insurance after another coinsured has intentionally burned the covered property ordinarily depends upon whether the interests of the coinsureds are joint or severable. Thus, where the interests of the coinsureds are considered joint and nonseparable, it has been held that an innocent coinsured may not recover on a fire insurance policy following an act of arson by another insured" (Annotation, *Right of Innocent Insured to Recover Under Fire Policy Covering Property Intentionally Burned by Another Insured,* 11 ALR4th 1228, 1229 [1982]). Pursuant to Partnership Law § 24, a partnership is bound by a partner's wrongful act where the partner, acting in the ordinary course of business, causes loss or injury to any person. Partnership Law § 26 provides that all partners are jointly and severally liable for

everything chargeable to the partnership under Partnership Law § 24 *(accord, Midwood Dev. Corp. v K 12th Assocs.,* 146 AD2d 754). In the instant case, the interests of the innocent partnership and Advocate are not joint because Advocate did not act within the scope of partnership business when he procured the fire.

In *Reed v Federal Ins. Co.* (71 NY2d 581), the Court of Appeals held that the innocent owner of property destroyed by fire was not barred from recovery. The terms of the policy unqualifiedly named the owner as an insured, even though the property was transferred to the owner through her father, the named coinsured, who independently caused the fire. The policy therein, as the partnership's policy in the instant case, provided that the insurer would not be liable for any loss that occurred by means within the control or knowledge of the insured. After the insured premises was destroyed by fire, the insurance company, suspecting arson, commenced an investigation and disclaimed liability. The two insureds commenced an action to recover the policy proceeds. The Court of Appeals held that the misconduct of the father in procuring the fire would not defeat recovery by his daughter, the innocent coinsured. In so determining, the Court of Appeals noted two policy concerns, that is, its reluctance to impute one individual's fraud to another, and an interest in discouraging arson for profit *(see, Reed v Federal Ins. Co., supra,* at 587).

However, the court also noted that the case, which involved 2 adults, 1 of whom was innocent, was not analogous to cases which barred recovery of insurance proceeds by a corporation where its property was destroyed by its agents who would be beneficiaries of any recovery by the corporation. The difference in the two types of cases arises because a corporate entity necessarily acts only through its agents and, therefore, in such a case it would be correct to impute an agent's wrongdoing to the corporate entity *(see, Reed v Federal Ins. Co., supra,* at 586-587).

In the instant case however, Advocate, in procuring the fire, was not acting as an agent of the partnership nor was he necessarily seeking to benefit from any recovery of policy proceeds by the partnership. Further, although the partnership entity more closely resembles a corporation than an individual, and *Reed (supra)* deals with individual insureds, the public policy concerns set forth in *Reed (supra)* are applicable in the present case. The courts should be reluctant to impute a partner's fraud or wrongdoing to the partnership.

In *Krupp v Aetna Life & Cas. Co.* (103 AD2d 252), our court previously held that an innocent coinsured spouse cannot be foreclosed from recovery where the insured property, held as tenants by the entirety, was damaged as a result of a fire procured by the other spouse. In *Krupp (supra)*, the insurance company had declined to make any payment pursuant to the homeowners' policy it had issued. An action was commenced by the innocent spouse. After joinder of issue the other spouse pleaded guilty to attempted arson.

The opinion therein discussed several approaches to the issue of whether an innocent coinsured may recover under a contract of insurance covering property which has sustained a loss because of the willful act of the other insured. The more traditional analysis focused "on the interests and obligations arising from the nature of the ownership of the insured property" *(Krupp v Aetna Life & Cas. Co., supra,* at 257). It was noted, however, that the number of jurisdictions in which followed such an approach was declining *(see, Krupp v Aetna Life & Cas. Co., supra,* at 258).

The case also focused on the language of the insurance policy in issue, and used traditional rules of contract construction to determine whether the rights of the insureds are joint or severable. The policy did not specify whether the interests of the spouses were joint or several. Since ambiguous language in an insurance policy is interpreted most strongly against the insurer author *(see, Government Employees Ins. Co. v Kligler,* 42 NY2d 863), it was determined that the interests of the spouses were separate. The innocent spouse was found to be entitled to recover her one-half interest in the policy proceeds *(see, Krupp v Aetna Life & Cas. Co., supra,* at 257-258).

A final approach in the *Krupp* case utilized "equitable and policy principles of fundamental fairness to formulate a rule permitting recovery by an innocent coinsured regardless of the joint or severable nature of the interest in the insured property" *(Krupp v Aetna Life & Cas. Co., supra,* at 258). This court noted a New Jersey decision, *Howell v Ohio Cas. Ins. Co.* (130 NJ Super 350, 354, 327 A2d 240, 242), where a significant factor was that "the responsibility or liability for the fraud— here, the arson—is several and separate rather than joint, and the husband's fraud cannot be attributed or imputed to the wife who is not implicated therein". Accordingly, the fraud of the coinsured husband did not void the policy as to the wife *(see also, Winter v Aetna Cas. & Sur. Co.,* 96 Misc 2d 497).

Under the circumstances, we find that the latter two approaches, incorporating an analysis of the insurance policy language with equitable and fundamental fairness principles, indicate that the insurance company in the instant case correctly paid the innocent partnership. We reach this conclusion even though, at the time of the payment, the insurance company had some indication that Advocate may have procured the fire. It was only subsequent to the payment of the partnership's claim that a jury specifically determined that Advocate, for personal reasons arising from a matrimonial action and his attempt to defeat his wife's interest in his business and personal property, set fire to the insured building to destroy pertinent records.

The insurance policy in the instant case specifically stated that the definition of insured, in the case of a partnership, included any partner thereof. However, "[a]n act of a partner which is not apparently for the carrying on of the business of the partnership in the usual way does not bind the partnership" (see, Partnership Law § 20 [2]). Here, Advocate, when setting fire to the partnership's insured premises, did not act as a partner or even to further his interest in the partnership. Rather, in procuring the fire, he was acting as a husband embroiled in a bitter matrimonial struggle with his wife. The purpose of the fire was to destroy his own personal, business and financial records in an attempt to defeat the wife's application for pendente lite relief in the matrimonial action. Furthermore, there is nothing to suggest that Advocate procured the fire in order to receive a share of the partnership's insurance proceeds.

As the insurance company acted properly in paying the innocent partnership under its policy, it should not be precluded from seeking recovery of that payment from Advocate via subrogation. "[S]ubrogation is a creature of equity having for its purpose the working out of an equitable adjustment between the parties by securing the ultimate discharge of a debt by the person who in equity and good conscience ought to pay it" (see, 16 Couch, Insurance 2d § 61.18 [rev ed]). It appears to us that Advocate, an obvious wrongdoer, should be obligated to pay for the damages which resulted from his own conduct of setting the fire.

We distinguish the facts of this case from the well-established rule that an "insurer has no right of subrogation against its own insured for a claim arising from the very risk

for which the insured was covered" *(Pennsylvania Gen. Ins. Co. v Austin Powder Co.,* 68 NY2d 465, 468). In the usual case, to allow the insurer's subrogation right to extend to its own insured would permit an insurer, in effect, to pass the incidence of loss from itself to the insured and thus avoid the coverage which the insured purchased.

Traditionally, the insurer's right of subrogation has been applied to claims against third parties whose wrongdoing has caused a loss to its insured which the insurer has an obligation to reimburse. A third party is one to whom the insurer owes no duty under the policy which covers the loss that was incurred. However, in a case involving a builder's risk insurance policy which also covered an insured subcontractor, the court stated in dicta that, although the general rule is that an insurance company has no right of action against a coinsured of the subrogor, the result would be different in a case involving design or fraud on the part of the defendant coinsured *(see, Louisiana Fire Ins. Co. v Royal Indem. Co.,* 38 So 2d 807 [La App]).

Recovery by an insurer against an insured subcontractor was sustained in *Tishman Co. v Carney & Del Guidice* (34 NY2d 941). There, the court held that the subcontractor was not an insured under the terms of the relevant fire insurance policy because its insurable interest under that policy was limited to its own property interest in the building under construction and no part of the damages alleged by the insurance company was for destruction of any of the subcontractor's property *(see, Tishman Co. v Carney & Del Guidice, supra).*

In the instant case, Advocate in his individual capacity was not insured under the partnership's policy. Rather, he had acquired his own separate policy to cover the contents of his law office. In addition, as we have previously determined, Advocate was not acting within the scope of any partnership business or as a partner at the time that he set the fire. Therefore, the insurance company should not be precluded from asserting its right of subrogation against Advocate. This conclusion is supported by the fact that subrogation is a creature of equity whose purpose it is to make the wrongdoer accountable for his misdeeds.

We further note that, contrary to Advocate's contention, the insurance company was not precluded by the Statute of Limitations from bringing this action. The six-year Statute of

Limitations applies because the gravamen of this lawsuit is based on fraud *(see,* CPLR 213 [8]). Advocate's fraud is evident in that he intentionally procured the fire which gave rise to the partnership's claim against the insurance company *(see,* PJI 4:80 1989 [Supp]) and he allowed the partnership to file a proof of loss statement which stated that the cause and origin of the loss were unknown. The time within which the action must be commenced is computed from the time the insurance company or the person under whom it claims, to wit, the partnership, discovered the fraud or could with reasonable diligence have discovered it *(see,* CPLR 213 [8]; *see, e.g., Kaufman v Kaufman,* 135 AD2d 786). The relevant date here is the jury's finding in the prior action that Advocate had intentionally procured the fire. Certainly, the instant action was commenced within the requisite time period.

Accordingly, the judgment is affirmed, with one bill of costs to the plaintiff. We note that the appeal from the order must be dismissed because the right of direct appeal therefrom terminated with the entry of the judgment *(see, Matter of Aho,* 39 NY2d 241, 248). The issues raised on appeal from the order are brought up for review and have been considered on the appeal from the judgment (CPLR 5501 [a] [1]).

THOMPSON, J. P., BRACKEN and BROWN, JJ., concur.

Ordered that the appeal from the order is dismissed; and it is further,

Ordered that the judgment is affirmed; and it is further,

Ordered that the plaintiff is awarded one bill of costs.