**MACMILLAN, INC., Plaintiff,**

v.

**FEDERAL INSURANCE COMPANY, Defendant,**

v.

**Edward P. EVANS and William P. Reilly, Third–Party Defendants.**

**No. 90 Civ. 0438 (RPP).**

United States District Court, S.D. New York.

May 16, 1991.

---

Skadden, Arps, Slate, Meagher & Flom by Erskine D. Henderson, New York City, for plaintiff.

Wilson, Elser, Moskowitz, Edelman & Dicker by James M. Kaplan, New York City, for Federal Ins. Co.

Howard, Darby & Levin by Jack P. Levin, New York City, for Edward P. Evans.

Weil Gotshal & Manges by Greg A. Danilow, New York City, for William F. Reilly.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

This is an action by a Delaware corporation against an insurer for reimbursement of litigation expenses incurred in defending lawsuits brought against former directors of the corporation. The third-party defendants, two former directors and officers of plaintiff Macmillan, Inc. ("Macmillan"), move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the insurer's third-party complaint against them for failure to state a claim upon which relief can be granted. For the reasons set forth below, the third-party defendants' motion is granted.

## BACKGROUND

In October 1987, Federal Insurance Company ("Federal") issued an Executive Liability and Indemnification Policy ("the Policy"), to Macmillan, Inc. ("Macmillan"). The Policy, commonly known as a director and officer liability policy, requires Federal (1) to pay on behalf of Macmillan all amounts Macmillan is "permitted or required by law" to pay to its officers and directors and/or to reimburse to them for costs and expenses they incur in defense of claims asserted against them in their capacity as officers and directors and (2) to pay on behalf of the officers and directors all

amounts they become obligated to pay in defense of such claims. Amended Complaint ¶¶ 2–3. The Policy covers claims alleging "wrongful acts" including "breaches of duty" committed or attempted by any "Insured Person, individually or otherwise in his Insured Capacity." Policy ¶¶ 1.1, 1.2 & 9.1. *See* Amended Complaint ¶¶ 18–20. The Policy excludes from coverage any claims:

> brought about by or contributed to by the dishonesty of such Insured Person if a judgment or other final adjudication adverse to such Insured Person establishes that acts of active and deliberate dishonesty were committed or attempted by such Insured Person with actual dishonest purpose and intent and were material to the cause of action so adjudicated;

Policy ¶ 3.2(d), or any claims:

> based upon or attributable to such Insured Person having gained any personal profit or advantage to which he was not legally entitled regardless of whether or not (1) a judgment or other final adjudication adverse to such Insured Person establishes that such Insured Person in fact gained such personal profit or other advantage to which he was not legally entitled, or (2) the Insured Person has entered into a settlement agreement to repay such unentitled personal profit or advantage to the Insured Organization.

Policy ¶ 3.2(e). *See* Third–Party Complaint ¶¶ 42–45.

In this action, Macmillan, Inc. ("Macmillan") seeks to recover $8 million in litigation fees it expended to defend eleven former independent directors in four lawsuits brought in state court in New York and Delaware in 1987–88. The lawsuits challenged the conduct of Macmillan's board of directors in responding to offers to acquire control of Macmillan made by The Robert M. Bass Group, Kohlberg Kravis Roberts & Co. and affiliates of Robert Maxwell.[1] In an opinion and order dated July 6, 1990

the Court dismissed Macmillan's complaint for failure to state a claim on the grounds that Macmillan had not indemnified the directors for whose expenses recovery was sought under the Policy. *See Macmillan, Inc. v. Federal Ins. Co.*, 741 F.Supp. 1079 (S.D.N.Y.1990). Thereafter, Macmillan indemnified eleven independent directors pursuant to Macmillan's by-laws and the Delaware Corporation Law and made a timely demand for reimbursement under the Policy. On August 8, 1990 Macmillan filed an amended complaint.

On October 26, 1990 Federal filed a third-party complaint against two other directors, Edward Evans ("Evans"), Chairman of the Board and Chief Executive Officer of Macmillan, and William Reilly ("Reilly"), Macmillan's President and Chief Operating Officer. In the third-party action, Federal seeks contribution and subrogation from Evans and Reilly for any liability Federal may have to Macmillan in the main action for litigation expenses of the eleven independent directors. Federal also seeks a declaratory judgment that it is not obligated to reimburse or indemnify Evans and Reilly under the Policy. The theory behind Federal's third-party complaint is that Evans and Reilly committed acts of deliberate dishonesty which caused Macmillan's board, including the eleven independent directors, to take the actions challenged in the Delaware and New York lawsuits. Federal relies on findings in those lawsuits that (1) a board-proposed restructuring of Macmillan was a disproportionate response to a takeover bid by the Robert M. Bass Group which would "entrench" the management group, including Evans and Reilly, and would eliminate the opportunity of public shareholders to realize a takeover premium without first obtaining management's consent, *see Robert M. Bass Group, Inc. v. Evans*, 552 A.2d 1227, 1243–44 (Del. Ch.1988), and (2) that Evans and Reilly had committed "fraud upon the board" in connection with a board of directors meeting

---

**1.** There are reported decisions in two of the four actions. *See Mills Acquisition Co. v. Macmillan, Inc.*, 559 A.2d 1261 (Del.1988); *Robert M. Bass Group, Inc. v. Evans*, 552 A.2d 1227 (Del.Ch.1988).

The other two actions having no reported dispositions are *In re Macmillan, Inc. Shareholders Litigation*, 552 A.2d 1227 (Del.Ch.1988) and *Greenfield Partners v. Macmillan, Inc.* (N.Y. Sup.Ct. filed Oct. 18, 1988).

at which they "deliberately conceal[ed]" the fact that they had tipped a corporate bidder to its competitor's bid. *Mills Acquisition Co. v. Macmillan, Inc.*, 559 A.2d 1261, 1277, 1283 (Del.1988).

Although Evans and Reilly are "Insured Persons" under the Policy, Macmillan has made no claim in the main action for reimbursement of any legal fees paid on their behalf. Amended Complaint ¶ 7. In papers filed on May 14, 1991 Macmillan stated that it will not indemnify Evans and Reilly and therefore will not seek to recover from Federal under the Policy for legal fees incurred on their behalf. Submission by Plaintiff Macmillan, Inc. in Further Response to the Motion of Third–Party Defendants to Dismiss (hereinafter "Pl. Subm.") at 2.

## DISCUSSION

A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). When passing on a motion to dismiss, the court must accept the allegations in the complaint as true and construe them in favor of the pleader. *See Dwyer v. Regan*, 777 F.2d 825, 829 (2d Cir.1985), *modified on other grounds*, 793 F.2d 457 (2d Cir.1986).

### 1. Contribution

In New York, contribution is a right giving rise to proportionate sharing of liability among joint, successive, independent, alternative or intentional tortfeasors. *See Weinheimer v. Hoffman*, 97 A.D.2d 314, 470 N.Y.S.2d 804 (App.Div. 1983). A right of contribution will not be implied in actions arising solely from breach of contract. *See Board of Educ. v. Sargent, Webster, Crenshaw & Folley*, 71 N.Y.2d 21, 517 N.E.2d 1360, 1364, 523 N.Y. S.2d 475, 479 (1987).

The thrust of Macmillan's complaint in the main action is that Federal breached its obligations under a contract of insurance. Although Count 2 alleges breach of the implied covenant of good faith and fair dealing and Count 3 alleges breach of fiduciary duty, these claims arise directly from obligations undertaken by Federal under the Policy. For example, Count 2 states that "[t]he Policy contained an implied covenant of good faith and fair dealing" (Amended Complaint ¶ 73) which Federal breached when it "refused to provide Macmillan and its directors and officers with coverage that was required under the Policy." (*Id.* ¶ 74). Similarly, in Count 3, Macmillan claims that Federal breached its fiduciary duty when it "refused to provide Macmillan and its directors and officers with coverage that was required under the Policy." (*Id.* ¶ 79). Federal, by merely invoking the language of tort in its third-party complaint, cannot transform Macmillan's action into one which sounds in tort. *See SSDW Co. v. Feldman–Misthopoulos Assoc.*, 151 A.D.2d 293, 542 N.Y.S.2d 565, 566 (App.Div.1989). A simple breach of contract is not to be considered a tort unless a duty independent of the contract itself has been violated. *See Clark–Fitzpatrick, Inc. v. Long Island Rail Rd. Co.*, 70 N.Y.2d 382, 516 N.E.2d 190, 521 N.Y. S.2d 653 (1987). Since Federal would only be liable to Macmillan for economic loss resulting from breach of contract, contribution is not available. *Sargent, Webster, Crenshaw & Folley*, 517 N.E.2d at 1361, 523 N.Y.S.2d at 476. Accordingly, Count 1 of Federal's third-party complaint is dismissed.

### 2. Subrogation

It is well-settled under New York law that "an insurer has no right of subrogation against its own insured for a claim arising from the very risk for which the insured was covered." *Pennsylvania Gen. Ins. Co. v. Austin Powder Co.*, 68 N.Y.2d 465, 468, 502 N.E.2d 982, 983, 510 N.Y.S.2d 67, 68 (1986). *See also National Union Fire Ins. Co. v. Continental Illinois Corp.*, 658 F.Supp. 775, 780–81 (N.D.Ill. 1987) (insurer's only remedy against insured officers and directors who committed intentional fraud is noncoverage); *Weinreb v. Weinreb*, 140 A.D.2d 226, 528 N.Y.S.2d

74 (App.Div.1988). Permitting recovery against an insured would be inequitable because it "would permit an insurer, in effect, 'to pass the incidence of the loss ... from itself to its own insured and thus avoid the coverage which its insured purchased'." *Pennsylvania General,* 502 N.E.2d at 985, 510 N.Y.S.2d at 70 (citations omitted).

Federal relies on *Hartford Fire Ins. Co. v. Advocate,* 162 A.D.2d 20, 560 N.Y.S.2d 331 (App.Div.1990), *leave to appeal granted,* 77 N.Y.2d 804, 569 N.E.2d 1026, 568 N.Y.S.2d 347 (1991), finding that the insurer was entitled to subrogation from a partner of an insured partnership who intentionally and for personal reasons set a fire which caused covered losses under the policy. Subrogation was permitted because the partner, although he was a member of the insured partnership, "was not acting within the scope of any partnership business or as a partner at the time that he set the fire." *Id.* 560 N.Y.S.2d at 336. Federal argues that Evans and Reilly were similarly not acting within their insured capacity when they committed the acts alleged in the Delaware and New York actions.

■ The *Advocate* case is distinguishable. Even though the acts of Evans and Reilly were not covered by the Policy, they were undertaken by Evans and Reilly solely while functioning in their capacity as corporate officers and directors. Their acts may have been improperly motivated but the acts nevertheless occurred in connection with legitimate matters of corporate concern which frequently confront officers and directors. In contrast, there is no showing whatsoever that the arsonist in *Advocate* was acting in his capacity as a partner of the insured when he set the fire. Rather, his acts were not in connection with any legitimate partnership activity and were more akin to those of an outside tortfeasor.

Finally, Federal's subrogation claim raises the potential for conflict of interest because persons insured under the Policy including Evans and Reilly are required to provide Federal with "such information and cooperation as it may reasonably require"

in connection with claims asserted under the policy. Policy ¶ 4.1. The New York Court of Appeals in *Pennsylvania General* recognized that "the public interest in assuring integrity of insurers' relations with their insureds and in averting even the potential for conflict of interest" required denial of the insurer's right of subrogation. *Pennsylvania General,* 502 N.E.2d at 986, 510 N.Y.S.2d at 71. *See also Fireman's Ins. Co. v. Wheeler,* 165 A.D.2d 141, 566 N.Y.S.2d 692, 695 (App.Div.1991). Accordingly, Count 2 of the third-party complaint is dismissed.

### 3. Declaratory Judgment

■ Evans and Reilly argue that Federal's claim for declaratory relief should be dismissed as premature. The Declaratory Judgment Act, 28 U.S.C. §§ 2201–02 (1988), provides that the court may grant declaratory relief "[i]n a case of actual controversy within its jurisdiction." The question in each case is "whether the facts alleged, under all circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Golden v. Zwickler,* 394 U.S. 103, 108, 89 S.Ct. 956, 959–60, 22 L.Ed.2d 113 (1969). In the insurance context, where the action involves a director and officer liability policy as at issue here, one court has noted:

> To have a ripe "case or controversy" with a director or officer, an insurer must at a minimum be subject to the assertion of a real (and not merely a possible) claim by the director or officer under the policy.

*National Union Fire Ins. Co. v. Continental Illinois Corp.,* 110 F.R.D. 615, 617 (N.D.Ill.1986). No "case or controversy" is presented here because neither Evans nor Reilly have sought reimbursement under the Policy, nor has Macmillan sought reimbursement under the Policy for monies paid on behalf of Evans and Reilly. Counsel for Macmillan has further stated that the Board will not vote to indemnify Evans and Reilly and therefore Macmillan will not seek to recover legal fees spent on their

behalf under the Policy. Pl. Subm. at 2. Under these circumstances, there is no real or immediate controversy between the parties to the third-party complaint. Accordingly, Count 3 of the third-party complaint is dismissed.

IT IS SO ORDERED.