**RCN TELECOM SERVICES, INC., Plaintiff,**

v.

**202 CENTRE STREET REALTY LLC, Defendant.**

No. 02 CIV. 2766(JES).

United States District Court, S.D. New York.

March 8, 2006.

Kramer Levin Naftalis & Frankel LLP, Ronald S. Greenberg, A. Owen Glist, of counsel, New York, NY, for Plaintiff RCN Telecom Services, Inc.

Herrick, Feinstein LLP, Christopher J. Sullivan, Harvey S. Feuerstein, Gary Mailman, of counsel, New York, NY, for Defendant 202 Centre Street Realty LLC.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

The primary issue before the Court, as raised by a panel of the Second Circuit in a Summary Order dated November 17, 2005 ("Remand Order"), is the apportionment of damages in an action for breach of contract. Because this Court is bound by the Second Circuit's directive in the Remand Order, this Court finds that plaintiff is

solely responsible for all damages it incurred and therefore orders that judgment be entered for defendant. The following shall constitute the Court's findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 52(a).

## BACKGROUND

Plaintiff, RCN Telecom Services, Inc. ("plaintiff" or "tenant"), and defendant, 202 Centre Street Realty LLC ("defendant" or "landlord"), entered into a lease "made as of July 31, 2000." [1] *See* Supplemental Joint Pre–Trial Order, dated Mar. 22, 2004 ("JPTO"), at 4. The lease, which concerned the second and third floors of the building located at 202–204 Centre Street ("the premises"), had an initial term of fifteen years and provided that such period would commence on the "Commencement Date," which was defined to mean the date on which "actual possession of the demised premises…is delivered to Tenant; and…Landlord's Work (as hereinafter defined) is completed." Pl.'s Trial Ex. 1 ("Lease"), at 1. "Landlord's Work" was defined as "deliver[y][of] possession of the demised premises to Tenant equipped with electrical capacity of at least 2000 Amps @ 208 volts." Lease at Ex. B. The lease also provided that "[i]f the Commencement Date has not occurred by September 1, 2000, Tenant shall have the right to terminate this lease." Lease at 3. Prior to the commencement date tenant had no obligations under the lease, *see* Pl.'s Post–Trial Mem. at 18 n. 7, and owed no rent payments to landlord, *see* Lease at 1; Tr., dated Apr. 13, 2004 ("Trial Tr.") at 65–66; Remand Order at 2.

Neither of the parties expected that landlord could complete its work by September 1, 2000, *see* Trial Tr. at 67–68, 115–18, 145–46, and, in fact, landlord did not complete its work by that date, JPTO at 6. Nevertheless, both parties moved forward with the project, and tenant, with the knowledge of landlord, *see* Trial Tr. at 154–56, 182–86, began to renovate and build out the premises, *see id.* at 71–74, 179–80.

Although minor problems arose along the way, *see, e.g., id.* at 133–36, 187–89, tenant's renovations proceeded swiftly. According to status reports generated by tenant's construction manager, Barney Skanska Construction Co., sixty-five percent of tenant's build-out work was completed by October 30, 2000, *see id.* at 192; JPTO at 8, Pl.'s Trial Ex. 8, and ninety-two percent had been completed by December 8, 2000, *see* Trial Tr. at 194; JPTO at 9, Pl.'s Trial Ex. 10. The December 8, 2000 status report, however, also contained news of a troubling development. That report indicated that another tenant in the premises ("the recalcitrant tenant") had denied plaintiff and defendant access to the basement—an area where work needed to be completed by both parties. *See* Pl.'s Trial Ex. 10; Trial Tr. at 88–93, 194–202, 232; JPTO at 9.

Over the next month landlord achieved a degree of success in forcing the recalcitrant tenant to provide access to the basement. JPTO at 10. As a result, plaintiff was able to gain the access that it needed and by January 26, 2001 it was ninety-seven percent done with its build-out work and had completed all of its work in the basement. *See* Trial Tr. at 93–94, 196–200; Pl.'s Trial Ex. 14; JPTO at 11.

The victory over the recalcitrant tenant, however, proved to be short-lived. Although plaintiff was able to finish its work in the basement, defendant could not maintain access long enough to complete its

---

**1.** Despite the July date, the lease was not actually executed until mid-August 2000.

Supplemental Joint Pre–Trial Order, dated Mar. 22, 2004, at 4.

work. *See* Trial Tr. at 93. In addition, defendant was not granted the emergency relief it sought in the courts and the litigation brought against the recalcitrant tenant dragged on without resolution. *See* JPTO at 10–12, 16–17; Trial Tr. at 240–48; Pl.'s Trial Ex. 18. Having ceased building out the property, plaintiff waited to see if defendant would complete its work and upgrade the power as stipulated in the lease. *See* JPTO at 16–17; Trial Tr. at 98–99.

Landlord was never able to complete its work in the basement. *See* Trial Tr. at 101, 232–33, 249. Finally, by letter dated February 26, 2002, tenant terminated the lease. *See* JPTO at 17; Trial Tr. at 101–02; Pl.'s Trial Ex. 30.

Plaintiff brought this action by Complaint dated April 10, 2002 seeking to recover for defendant's breach of the lease. Compl. ¶¶ 16–19. This Court conducted a bench trial on April 13 and 14, 2004. Following trial, the parties submitted posttrial memoranda of law, and this Court heard Summations on July 20, 2004. *See* Tr., dated July 20, 2004 ("Summ.Tr."). At a February 14, 2005 conference, this Court made findings of fact and conclusions of law on the record. This Court found that both parties caused fifty percent of the damages incurred by plaintiff and therefore entered judgment awarding plaintiff fifty percent of its losses plus prejudgment interest.[2] *See* Tr., dated Feb. 14, 2005 ("Conf.Tr."), at 2.

Both parties appealed the Court's ruling, and the Second Circuit vacated the judgment and remanded the case by Summary Order. *See* Remand Order. The Second Circuit ordered this Court to specify findings of fact and to "dispose of this case in accordance with this summary order." *Id.* at 2.

## DISCUSSION

Although the Remand Order raised a number of issues, this case concerns essentially the issue of causation. *See* Trial Tr. at 4–5; Summ. Tr. at 17–19, 27–47; Conf. Tr. at 2–4.

■ As the Second Circuit has stated, "Causation is an essential element of damages in a breach of contract action; and, as in tort, a plaintiff must prove that a defendant's breach directly and proximately caused his or her damages." *Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank,* 392 F.3d 520, 525 (2d Cir.2004). Therefore, in order to prevail on a breach of contract claim, a plaintiff has the burden, as part of its "prima facie case," to show that the damages it seeks "are 'directly and proximately' caused by a defendant's breach of contract" since causation is a "crucial" element of its case. *Id.* at 526 (quoting *Wakeman v. Wheeler & Wilson Mfg. Co.,* 101 N.Y. 205, 209, 4 N.E. 264, 266 (1886)); *see also Krauss v. Greenbarg,* 137 F.2d 569, 572 (3d Cir.1943); *Point Prods. A.G. v. Sony Music Entm't, Inc.,* 215 F.Supp.2d 336, 341–44 (S.D.N.Y.2002); *Krofft Entm't, Inc. v. CBS Songs,* 653 F.Supp. 1530, 1534–35 (S.D.N.Y.1987). Just as in cases grounded in tort, the principle of proximate causation "exist[s] to restrict liability in contract as well." *Exxon Co. v. Sofec, Inc.,* 517 U.S. 830, 839–40, 116 S.Ct. 1813, 135 L.Ed.2d 113 (1996).

Based on these well-settled principles of causation, this Court determined, in the present case, that plaintiff had successfully proven that defendant was the proximate cause of fifty percent of the damages suf-

---

**2.** In addition, plaintiff was awarded the full amount of rent payments that it mistakenly paid defendant. Since that ruling was affirmed by the Second Circuit, *see* Remand Order at 2, it is not at issue here.

fered by plaintiff. In so ruling, the Court concluded that "both sides bear some responsibility for the loss here," and that plaintiff's "business risk" to "go in and build out [the premises]" despite its right under the contract "to do nothing" and wait for the landlord to successfully install the power was the proximate cause of the other fifty percent of plaintiff's losses. *See* Conf. Tr. at 2–3. As the Court stated during Summations, plaintiff created, at least partially, "an attenuating causation factor," Summ. Tr. at 29, by deciding to pour millions of dollars into the premises, at a time when it had no responsibilities or liabilities, in order to further its own business purpose, i.e., to avoid having to renovate the premises after the commencement date and its obligation to pay rent had arisen, *see* Trial Tr. at 66; Summ. Tr. at 30.

The Second Circuit vacated and remanded the Court's decision with the admonition that "[o]f special importance to the district court's fact-finding on remand is that in New York, 'unlike in tort law, contract law does not provide for proportional liability among potentially culpable parties.'" Remand Order at 3 (quoting *Point Prods. A.G.*, 215 F.Supp.2d at 343). The Court also cited *Macmillan, Inc. v. Fed. Ins. Co.*, 764 F.Supp. 38, 41 (S.D.N.Y. 1991), for the proposition that "[a] right of contribution will not be implied in actions arising solely from breach of contract."

This Court did not believe that it was apportioning liability for a tort or dealing with claims for contribution, but rather was endeavoring to enforce the "crucial" requirement that plaintiff show causation as to all losses incurred. The Second Circuit has apparently concluded that in so doing this Court committed error. Therefore, this Court is constrained by the directions of the Second Circuit to find one

party or the other solely responsible for plaintiff's damages.

■ Therefore, in view of that instruction, despite this Court's previous finding that both plaintiff and defendant proximately caused fifty percent of plaintiff's damages, this Court concludes that responsibility for all damages incurred by plaintiff must fall squarely on plaintiff's shoulders.

By making the business decision to build out the premises prior to landlord completing its work, plaintiff took the risk that landlord would never successfully complete the electrical upgrade of the one-hundred-year-old building. *See* Trial Tr. at 146. Prior to the landlord completing that work, the term of the lease did not commence, tenant had no obligations under the lease, and tenant had no responsibility to pay rent. In addition to these safeguards against landlord's non-performance, *see* Summ. Tr. at 36, tenant also possessed an unfettered right to terminate the lease due to landlord's non-performance by September 1, 2000—a right which both parties seemed to assume would inevitably inure to plaintiff's benefit, *see* Trial Tr. at 67–68, 115–18, 145–46; Pl.'s Facts at 7 ("At the time the Lease was executed, in mid-August 2000, nobody expected the power to be installed by September 1."). Despite all these bulwarks against landlord's breach, tenant decided to go forward with the build out of the premises simply so it could avoid paying several months of rent, assuming that landlord successfully completed its work, while the premises were being renovated. *See* Summ. Tr. at 30–33; Trial Tr. at 65–66. It was this business decision that caused plaintiff's damages.

Finally, this case is factually distinguishable from *Friedland v. Myers*, 139 N.Y. 432, 34 N.E. 1055 (1893), and its progeny. The *Friedland* court, in considering a

cause of action for breach of the covenant of quiet enjoyment, ruled that:

> If the property is leased for a special purpose, which is known to the lessor and possession is refused because of a prior lease to another party, or of other fault of the lessor, the lessee may recover as damages his actual and necessary expenses incurred in preparing for the occupation of the property in the manner contemplated by the parties.

*Friedland,* 139 N.Y. at 436, 34 N.E. at 1055. In that case the Court allowed plaintiff to recover the cost of constructing fixtures necessary for his use of the rented property as a drug store when the lessor failed to deliver possession of the property on the commencement date of the lease. *Id.* at 436–37, 34 N.E. at 1056. Whereas the lease at issue in *Friedland* had a definitive commencement date so that neither party could consider it "doubtful whether [the property] might be" "given as covenanted in the lease," *id.* at 437, 34 N.E. at 1056, the lease at issue in the present case had an amorphous commencement date that was predicated on landlord completing an electrical upgrade of a one-hundred-year-old building. As such, the rationale of *Friedland* is simply not applicable here.

## CONCLUSION

For the foregoing reasons, this Court finds that it is constrained by the Remand Order to hold that plaintiff was the cause of the damages that it suffered. The Court directs the Clerk of the Court to enter judgment for defendant and to close this case. The Pre–Trial Conference previously scheduled for April 18, 2006 shall be and hereby is cancelled.

It is **SO ORDERED.**