OPINION OF THE COURT
 

 Alexander, J.
 

 Under New York State’s contribution statute, "two or more persons who are subject to liability for damages for the same personal injury, injury to property or wrongful death, may claim contribution among them whether or not an action has been brought or a judgment has been rendered against the person from whom contribution is sought” (CPLR 1401).
 
 *24
 
 The issue presented on this appeal is whether CPLR 1401 permits contribution between two parties whose potential liability to a third party is for economic loss resulting only from a breach of contract. We conclude that it does not.
 

 This third-party action arises from a high school construction project undertaken for the Hudson City School District (District). Appellant Sargent, Webster, Crenshaw & Folley (Sargent) is the architectural firm that was hired by the District to work on the project; respondent Thompson Construction Corp. (Thompson) was hired as the project’s general contractor. Each was party to a separate contract with the District. Sargent’s contract, entered into on March 21, 1966, required it to prepare plans and specifications for the building, supervise its construction, inspect the building subsequent to its construction, and advise the District of any measures required to remedy possible defects in the building. Thompson’s contract, entered into on February 28, 1969, required it to perform the actual construction work.
 

 Sargent issued its final certificate of completion for the building on September 18, 1972, and soon thereafter the building’s roof began to leak. It was not until 1980, however, that the District commenced an action against Sargent and Thompson seeking damages for breach of contract. In its complaint, the District alleged that the roofing on the high school was defective and not of the type for which it contracted. Sargent was charged with having failed to obtain a 20-year guarantee bond and certificate of compliance from the manufacturer of the roofing materials; to obtain proper approval of the roofing subcontractor; to obtain a two-year written guarantee for the roof signed by Thompson and the roofing subcontractor; and generally, to perform its required duties in the administration of the contract. Thompson was alleged to have failed to construct the proper type of roof; to provide guarantees for the roof; to inspect the roof for a two-year period after construction; and to make repairs on the roof. The District further alleged, as explanation for its delay in bringing the lawsuit, that Sargent and Thompson had fraudulently concealed both the defective condition of the roof and the fact that the various guarantees for the roof had not been furnished.
 

 Sargent and Thompson each moved to dismiss the complaint as being barred by the six-year Statute of Limitations applicable to contract actions (CPLR 213 [2]). Special Term granted
 
 *25
 
 Thompson’s motion to dismiss but denied Sargent’s motion, holding that the "continuous treatment” doctrine, applicable in cases of professional malpractice, operated to toll the Statute of Limitations so as to make the action brought against the architect timely
 
 (see, Greene v Greene,
 
 56 NY2d 86;
 
 see also, Sears, Roebuck & Co. v Enco Assocs.,
 
 43 NY2d 389). The Appellate Division affirmed in all respects
 
 (Board of Educ. v Thompson Constr. Corp.,
 
 111 AD2d 497), concluding specifically that the District’s cause of action sounded in contract, and was therefore governed by a six-year Statute of Limitations.
 

 Sargent subsequently instituted this third-party action seeking contribution or indemnification from Thompson for whatever damages it might incur in the action brought by the District. Thompson moved to dismiss the third-party complaint for failure to state a cause of action
 
 (see,
 
 CPLR 3211 [a] [7]). Special Term denied the motion, holding that "the dismissal of a plaintiff’s cause of action against one primary defendant based upon a statutory bar does not vitiate a primary codefendant’s ability to maintain a third-party action against the dismissed primary defendant”. The court thus concluded that Sargent’s third-party action could go forward, and it left for trial the determination of whether the action was properly one for contribution or indemnification.
 

 The Appellate Division reversed and dismissed the third-party complaint, concluding that the contribution statute (CPLR 1401) has no application where "the potential liability to the plaintiff of both the defendant and the third-party defendant is purely for contractual benefit of the bargain * * * or loss of the value of promised performance” (125 AD2d, at 29). The court held further that Sargent had not set forth the elements of an indemnity claim, but it granted leave to replead that cause of action
 
 (see,
 
 CPLR 3211 [e]). The lone dissenting Justice would have affirmed, concluding that not only had Sargent adequately stated a cause of action for indemnification, but that "[i]n causes of action for contribution, the emphasis has been on whether the parties involved in the third-party action contributed to the same injury rather than the particular theories of law sued upon” (125 AD2d, at 32).
 

 The Appellate Division granted leave to this court, certifying the following question: "Did this court err, as a matter of law, in reversing the order of Special Term, granting the
 
 *26
 
 motion and dismissing the third-party complaint against third-party defendant Thompson Construction Corporation, with leave to replead so much thereof as asserted a cause of action for indemnification within 20 days after service of a copy of the order?” We now affirm and answer the certified question in the negative.
 

 That purely economic loss resulting from a breach of contract does not constitute "injury to property” within the meaning of New York’s contribution statute is made plain by the legislative history of CPLR 1401 (L 1974, ch 742, § 1). That statute, proposed by the Judicial Conference of the State of New York, was intended as a codification of
 
 Dole v Dow Chem. Co.
 
 (30 NY2d 143), a watershed case that "drastically chang[ed] the law of this State regarding the apportionment rights of joint tort-feasors”
 
 (D’Ambrosio v City of New York,
 
 55 NY2d 454, 461-462;
 
 see, Ravo v Rogatnick,
 
 70 NY2d 305, 312;
 
 Guzman v Haven Plaza Hous. Dev. Fund Co.,
 
 69 NY2d 559, 567;
 
 Schauer v Joyce,
 
 54 NY2d 1, 5).
 

 The common-law rules of contribution were extremely rigid, precluding apportionment of liability among tort-feasors. As we observed in
 
 Dole,
 
 "[t]he basic theoretical bar at common law to any apportionment among those who committed torts, either by indemnity or by contribution, was the unwillingness of the law as a matter of policy to make relative value judgments of degrees of culpability among wrongdoers”
 
 (Dole v Dow Chem. Co.,
 
 30 NY2d 143, 147,
 
 supra
 
 [citation omitted]). This absolute bar to apportionment eventually gave way to limited contribution among tort-feasors under former CPLR 1401 (L 1962, ch 308, as amended by L 1964, ch 388, § 5),
 
 [1]
 
 which permitted contribution only on a
 
 pro rata
 
 basis between tort-feasors who were subject to the same money judgment
 
 (see,
 
 McLaughlin, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, C1401:l, at 360-361). This restrictive rule, however, retained in the plaintiff the power to choose which defendants should be adjudicated joint tort-feasors. Consequently, those defendants who were not sued by the plaintiff could not be required to contribute to the plaintiffs damages
 
 (DAmbrosio v City of New York,
 
 55 NY2d 454, 460,
 
 supra; see, Green Bus Lines v Consolidated Mut. Ins. Co.,
 
 74
 
 *27
 
 AD2d 136, 148-149,
 
 Iv denied
 
 52 NY2d 701; McLaughlin, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, C1401:l, at 360-361).
 

 To ameliorate the harshness of this contribution rule upon those tort-feasors who happened to be sued by an injured plaintiff, a theory of "implied indemnification” was employed to permit an adjudicated tort-feasor to seek indemnification from other nonparty tort-feasors if the negligence of the adjudicated tort-feasor was only "passive” or of a secondary nature
 
 (see, D’Ambrosio v City of New York,
 
 55 NY2d 454, 461,
 
 supra).
 
 Under this implied indemnification theory, however, there was no apportionment of liability between the tort-feasors; one was either "secondarily” negligent and completely free from liability, or one was "primarily” negligent and responsible for all of the plaintiff’s damages. No form of liability in between the two extremes could lie
 
 (see, DAmbrosio v City of New York,
 
 55 NY2d 454, 461,
 
 supra).
 

 Dole
 
 liberalized the contribution rules to allow an adjudicated tort-feasor to seek contribution, or "partial indemnity”, from another tort-feasor whether or not the second tort-feasor had been made a party to the action
 
 (see, DAmbrosio v City of New York,
 
 55 NY2d 454, 462,
 
 supra; Dole v Dow Chem. Co.,
 
 30 NY2d 143, 147,
 
 supra).
 
 After
 
 Dole,
 
 courts were no longer restricted to "apportioning liability for contribution on a
 
 pro rata
 
 basis * * * or shifting responsibility entirely from one tortfeasor to another under the primary-secondary tortfeasor doctrine of indemnification” (12th Ann Report of NY Jud Conf on CPLR, 1974 McKinney’s Session Laws of NY, at 1803;
 
 see, DAmbrosio v City of New York,
 
 55 NY2d 454, 462,
 
 supra);
 
 instead, they could now apportion liability according to the tort-feasors’ relative degrees of fault for the injuries sustained by the plaintiff
 
 (see,
 
 CPLR 1402;
 
 Ravo v Rogatnick,
 
 70 NY2d 305, 312-313,
 
 supra; D'Ambrosio v City of New York,
 
 55 NY2d 454, 462,
 
 supra).
 

 Thus, as a codification of
 
 Dole,
 
 CPLR 1401 had its genesis in tort law and in the complications surrounding the apportionment of liability among joint tort-feasors. The legislative history makes clear, and indeed we have recognized, that the statute applies not only to joint tort-feasors, but also to concurrent, successive, independent, alternative, and even intentional tort-feasors (12th Ann Report of NY Jud Conf on CPLR, 1974 McKinney’s Session Laws of NY, at 1805-1806; McLaughlin, Practice Commentaries, McKinney’s Cons Laws
 
 *28
 
 of NY, Book 7B, C1401:l, at 362-363;
 
 see, Ravo v Rogatnick,
 
 70 NY2d 305, 312,
 
 supra; Schauer v Joyce,
 
 54 NY2d 1, 5,
 
 supra).
 
 Contribution is also permitted under the statute in cases involving strict liability in tort (12th Ann Report of NY Jud Conf on CPLR,
 
 op. cit.,
 
 at 1807;
 
 see, Doundoulakis v Town of Hempstead,
 
 42 NY2d 440, 451). While "[i]t is the fact of liability to the same person for the same harm rather than the legal theory upon which
 
 tort liability
 
 is based which controls” (12th Ann Report of NY Jud Conf on CPLR,
 
 op. cit.,
 
 at 1807 [emphasis added];
 
 see, Guzman v Haven Plaza Hous. Dev. Fund Co.,
 
 69 NY2d 559, 568,
 
 supra),
 
 it is nonetheless true that the existence of some form of tort liability is a prerequisite to application of the statute. We find nothing in the legislative history or the common-law evolution of the statute on which to base a conclusion that CPLR 1401 was intended to apply in respect to a pure breach of contract action such as would permit contribution between two contracting parties whose only potential liability to the plaintiff is for the contractual benefit of the bargain.
 
 [2]
 

 To permit apportionment of liability, pursuant to CPLR 1401, arising solely from breach of contract would not only be at odds with the statute’s legislative history, but also do violence to settled principles of contract law which limit a contracting party’s liability to those damages that are reasonably foreseeable at the time the contract is formed
 
 (see,
 
 Restatement [Second] of Contracts § 351 [1] [1979]; Calamari and Perillo, Contracts § 14-5, at 523 [2d ed]). Here, Thompson was entitled to expect at the time it contracted with the District that its liability would be determined by its own contractual undertaking. Thompson should not now be con
 
 *29
 
 fronted with potential liability based on the promise made by Sargent in its separate contract with the District. Sargent’s argument that without a right of contribution, architects will be exposed to crushing liability is unpersuasive. Nothing prevented Sargent from negotiating for protection from liability in its contract with the District. Having neglected to do so, it may not now be heard to complain that it is exposed to a claim for damages.
 

 Nor are we persuaded that we should create a common-law right of contribution in contract actions. The policy considerations that underlay
 
 Dole
 
 — the need to liberalize the inequitable and harsh rules that once governed contribution among joint tort-feasors — are not pertinent to contract matters. Parties to a contract have the power to specifically delineate the scope of their liability at the time the contract is formed. Thus, there is nothing unfair in defining a contracting party’s liability by the scope of its promise as reflected by the agreement of the parties. Indeed, this is required by the very nature of contract law, where potential liability is determined in advance by the parties.
 

 Finally, Sargent contends that it is entitled to seek contribution under the statute because the District will be permitted to argue in its primary action that appellant breached a "duty of due care” in performing the terms of the contract. This argument is without merit. As we have recently explained, "[m]erely charging a breach of a 'duty of due care’, employing language familiar to tort law, does not, without more, transform a simple breach of contract into a tort claim”
 
 (Clark-Fitzpatrick, Inc. v Long Is. R. R. Co.,
 
 70 NY2d 382, 390). Here, the District seeks only pecuniary damages resulting from the defective condition of the roof. No legal duty independent of appellant’s contractual obligations to supervise construction and apprise the District of defects is claimed to have been breached
 
 (see, Clark-Fitzpatrick, Inc. v Long Is. R. R. Co.,
 
 70 NY2d 382, 390,
 
 supra; Schiavone Constr. Co. v Mayo Corp.,
 
 56 NY2d 667,
 
 revg on dissenting opn below
 
 81 AD2d 221, 227-234; Prosser and Keeton, Torts § 92 [5th ed]). Under these circumstances, we conclude that Sargent’s contribution claim was properly dismissed, as was the indemnity claim. As originally pleaded, the third-party complaint$ does not allege facts showing that Sargent was unfairly required to discharge a duty that should have been discharged by another,, such that a contract to indemnify should be implied by law
 
 (see, McDermott v City of New York,
 
 50 NY2d 211, 216-217,
 
 *30
 

 supra;
 
 Restatement of Restitution § 76). Sargent was appropriately granted leave to replead such facts as might exist to support an indemnification claim.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the negative.
 

 Chief Judge Wachtler and Judges Simons, Kaye, Titone, Hancock, Jr., and Bellacos a concur.
 

 Order affirmed, etc.
 

 [1]
 

 . Former CPLR 1401 was derived from section 211-a of the Civil Practice Act, which was enacted by the Legislature in 1928
 
 (see, D’Ambrosio v City of New York,
 
 55 NY2d 454, 460;
 
 Green Bus Lines v Consolidated Mut. Ins. Co.,
 
 74 AD2d 136, 148).
 

 [2]
 

 . The conclusion that CPLR 1401 does not apply to actions based solely on a breach of contractual obligations is further supported by General Construction Law § 25-b, which defines "injury to property” as "an actionable act, whereby the estate of another is lessened, other than a personal injury,
 
 or the breach of a contract”
 
 (emphasis added).
 

 Furthermore, while it is true that the statute is applicable in cases where a tort-feasor is charged with "breach of warranty” in connection with a defective product that causes injury, in such cases the breach of warranty is as much a tortious wrong as it is a breach of contract
 
 (see,
 
 12th Ann Report of NY Jud Conf on CPLR, 1974 McKinney’s Session Laws of NY, at 1807;
 
 see, e.g., Codling v Paglia,
 
 32 NY2d 330;
 
 Noble v Desco Shoe Corp,
 
 41 AD2d 908;
 
 Walsh v Ford Motor Co.,
 
 70 Misc 2d 1031). Indeed, we have recognized that the appellation "breach of warranty” in product liability cases is misleading, for "strict products liability sounds in tort rather than in contract”
 
 (Martin v Dierck Equip. Co.,
 
 43 NY2d 583, 590, quoting
 
 Victorson v Bock Laundry Mach. Co.,
 
 37 NY2d 395, 402).