**SUZY PHILLIPS ORIGINALS, INC., Plaintiff,**

v.

**COVILLE, INC., Defendant.**

No. 95–CV–3388.

United States District Court, E.D. New York.

June 20, 1996.

Mitchell D. Kessler, New York City, for plaintiff.

Kathryn Dalli, Salon, Marrow & Dyckman, New York City, for defendant.

## MEMORANDUM AND ORDER

### SUMMARY

GLASSER, District Judge.

This case arises out of a shipment of defective fabric from defendant Coville, Inc., a textile converter, to plaintiff Suzy Phillips Originals, Inc., a garment manufacturer. Suzy Phillips alleges claims against Coville for breach of contract, negligence, and misrepresentation. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because of diversity of citizenship and an amount in controversy exceeding $50,000.

Defendant Coville has moved for summary judgment asking the Court to dismiss plaintiff's Third Cause of Action for Negligence, its Fourth Cause of Action for Misrepresentation, and its Second Cause of Action for Breach of Contract, which alleges damages for lost profits and incidental expenses. Dismissal of these claims would leave remaining only the First Cause of Action for Breach of Contract, which alleges damages for the cost of the goods sold, an amount less than $50,-000. Because jurisdiction under 28 U.S.C. § 1332 would no longer be proper if plaintiff's claims were for less than $50,000, the defendant has moved that the case be remanded to state court if its summary judgment motion is granted.

### FACTS

In 1994, the parties entered into three separate agreements for plaintiff's purchase of "Highlander Fleece" fabric from defendant. As alleged in plaintiff's complaint,

> On or about the 27th day of April, 1994, plaintiff ordered from the defendant, and defendant agreed to sell to plaintiff, approximately 1800 yards of defendant's fabric, named "Highlander Fleece" style number P1613, at an agreed price of $4.30 per yard.... On or about the 27th day of April, 1994, the plaintiff ordered from defendant and defendant agreed to sell to plaintiff, 1800 yards of defendant's product, a fabric named "Highlander Fleece," style WB134–13, at an agreed price of $4.50 per yard.... On or about the 1st day of October, 1994, the plaintiff ordered from the defendant and the defendant

agreed to sell to plaintiff, approximately 3659 yards of a fabric manufactured by the defendant called "Highlander Fleece" style number BW134A, at an agreed price of $4.90 per yard.

Complaint ¶¶ 8, 10, 12. In response to and acknowledgment of plaintiff's orders, Coville sent Suzy Phillips certain forms entitled "Sales Contract[s]." [1] The forms memorialize the terms previously agreed upon by the parties, namely the style, amount, and price of the fabric ordered, and the date the fabric was to be shipped. The forms also contain the following clauses relevant to plaintiff's claims:

1. CONTRACT ACKNOWLEDGEMENT: This contract embodying the terms on the face and reverse side hereof confirms the agreement to buy and sell the goods herein described and is hereby acknowledged by the parties to be correct. *It shall become binding and enforceable against the Buyer* either (a) when signed or accepted in writing by the Buyer or its agent or broker, or (b) when signed and delivered by the Seller to the Buyer unless the Buyer gives the Seller written notice of objection to its contents within ten days after receipt hereof, or *(c) when Buyer has paid for or accepted delivery of the whole or any part of the goods herein described,* or (d) when Buyer has given either delivery dates, shipping instructions, instructions to bill and hold, instructions as to colors, designs, patterns, specifications or assortments, as to all or any part of the goods herein described.

Defendant's Ex. A. ¶ 1.

CLAIMS AND ALLOWANCES: (a) Seller shall not be liable for normal manufacturing defects nor for customary variations from quantities or specifications, nor for defects or irregularities beyond control of Seller or natural to or inherent in any particular fiber, yarn, fabric or construction. In the event of any claim that the quality of the goods delivered is not according to contract, they must be promptly and properly offered to Seller for examination without cost to Seller, in the same condition as when delivered to Buyer or its agent.... (b) Claims of any kind or nature, except for latent defects, are specifically barred, unless made in writing within thirty (30) days after the date of invoice. Claims for latent defects are barred unless made in writing within ninety (90) days after the date of invoice. Notwithstanding the foregoing, *all claims, whether for latent or patent defects, are specifically barred for goods after they have been cut or processed or changed from the original state ...* (c) The limit of liability of Seller for defective merchandise shall be the difference in value on contract date of delivery between goods specified and goods actually delivered ... (e) *In no event shall the Buyer be entitled to claim or receive from Seller any other damages whatsoever or any consequential, indirect and/or special damages, and in no instance shall damages include loss of profit on contemplated use or profit of any description.*

Defendant's Ex. A. ¶ 11 (emphasis added).

Although it never signed these forms, Suzy Phillips does not deny having received them. Also undisputed is Coville's delivery of the goods ordered and plaintiff's acceptance of them. Complaint ¶¶ 9, 11, 13; Defendant's 3(g) Statement ¶ 5. Suzy Phillips cut the goods into garments which it sold and delivered to its customers in the fall of 1994.

In January, 1995, upon being notified by the Consumer Products Safety Commission of the potential flammability of certain styles of Highlander Fleece fabric, Coville instituted a recall program whereby it agreed to treat any Highlander Fleece fabric and garments made from such fabric that had not yet been sold to the general public. Coville notified its customers of the potential problem with the Highlander Fleece fabric and of its recall program. Defendant's 3(g) Statement ¶ 13–15. Pursuant to the recall program, plaintiff returned approximately 900 yards of uncut fabric and 4,750 garments to

---

**1.** The first two of these forms are dated May 3, 1994, and the third is dated September 6, 1994. There appears to be a discrepancy between the September 6, 1994 date on the form Coville sent to Suzy Phillips and the October 1, 1994 date asserted in plaintiff's complaint, but this discrepancy is not relevant for purposes of this motion.

Coville. Defendant's 3(g) Statement ¶¶ 16, 17. The uncut fabric was treated and returned to plaintiff. The present dispute centers around the cut garments, the treatment and return of which plaintiff refuses to accept from defendant. Defendant's 3(g) Statement ¶¶ 16, 20.

### DISCUSSION

### I. *SUMMARY JUDGMENT*

 Federal Rule of Civil Procedure 56(c) provides in relevant part that summary judgment "shall be rendered forthwith if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." A genuine factual issue exists if there is sufficient evidence favoring the nonmovant such that a jury could return a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). Since granting a motion for summary judgment deprives the nonmoving party of its day in court, the district court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Gallo v. Prudential Residential Svcs., Ltd.*, 22 F.3d 1219, 1223 (2d Cir.1994). However, the nonmoving party must come forward with facts, and not doubts, as to the veracity of the moving party's allegations: "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

 In a contract dispute, a motion for summary judgment may be granted if the agreement's language is unambiguous and conveys a definite meaning. *Sayers v. Rochester Telephone Corp.*, 7 F.3d 1091, 1094 (2d Cir.1993) (citing cases). If the contractual language is susceptible to different reasonable interpretations, and there is relevant extrinsic evidence of the parties actual intent, then the contract's meaning becomes an issue of fact precluding summary judgment. *Id.*

### II. *THE THIRD CAUSE OF ACTION*

Plaintiff's Third Cause of Action alleges that defendant was negligent, careless, reckless, grossly negligent, and/or wilful in manufacturing, distributing, and failing to adequately test the Highlander Fleece fabric, and claims damages in the approximate amount of $100,000 resulting from these acts. Complaint ¶¶ 32–37. However, in response to defendant's motion, plaintiff has offered to withdraw the Third Cause of Action. Plaintiff's Memo. of Law p. 9. Plaintiff's offer makes moot defendant's motion for summary judgment with regards to this cause of action.

### III. *THE FOURTH CAUSE OF ACTION*

 Plaintiff's Fourth Cause of Action alleges that the defendant knew, prior to selling or delivering its goods to the plaintiff, that the Highlander Fleece fabric was unreasonably unsafe, potentially flammable, and in violation of the Flammability Standard of the Flammable Fabrics Act. Complaint ¶¶ 38–40. Plaintiff alleges that the defendant's failure to inform it of the flammable nature of the fabric involved misrepresentation by omission, and that plaintiff was damaged as a result of that omission in the amount of $100,000. Complaint ¶¶ 44–45.

 Under New York law, a cause of action seeking damages for fraud cannot be sustained when the only fraud charged relates to a breach of contract. *F. Nathanson & Co. v. Marinello*, 192 A.D.2d 575, 596 N.Y.S.2d 133 (2d Dep't 1993). *See also McKernin v. Fanny Farmer Candy Shops*, 176 A.D.2d 233, 234, 574 N.Y.S.2d 58, 59 (2d Dep't 1991) ("where a claim to recover damages for fraud is premised on an alleged breach of contractual duties and the supporting allegations do not concern representations which are collateral or extraneous to terms of the parties' agreement, a cause of action sounding in fraud does not lie") (citing cases); *Manshul Construc. Corp. v. City of New York*, 143 A.D.2d 333, 336, 532 N.Y.S.2d 419, 421 (2d Dep't 1988) (same). Because the fraud claim involves Coville's alleged breach of a warranty of merchantability, and does not "concern representations which are collateral or extraneous to the terms of the

parties' agreement," plaintiff's Fourth Cause of Action fails to state a claim and must be dismissed.

■ If the complaint were capable of an interpretation claiming a negligent misrepresentation, the result would be the same. A claim for negligent misrepresentation is not actionable unless the alleged misrepresentation is a statement expressed directly to the plaintiff, with knowledge or notice that it will be acted upon, to one whom the author is bound by some relation of duty, to act with care if he acts at all. *White v. Guarente*, 43 N.Y.2d 356, 362–363, 401 N.Y.S.2d 474, 372 N.E.2d 315 (1977) (citation omitted). *See also Clark–Fitzpatrick, Inc. v. Long Island Rail Road Co.*, 70 N.Y.2d 382, 389, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987) ("a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated") (citing cases); *Niagara Mohawk Power Corp. v. Stone & Webster Eng. Corp.*, 725 F.Supp. 656, 661–62 (N.D.N.Y.1989) (citing New York cases). Plaintiff has not alleged the existence or breach of any legal duty that it was owed by the defendant independent of defendant's contractual obligations and its claim of negligent misrepresentation therefore must be dismissed. In addition, the only misrepresentation alleged by plaintiff involves a failure to disclose, and such an act of passive negligence is not actionable in New York. *See Quintel Corp. v. Citibank*, 589 F.Supp. 1235, 1244 (S.D.N.Y.1984) (nondisclosure unaccompanied by some act or conduct which deceives the plaintiff does not constitute misrepresentation).

■ Furthermore, because under New York law a party in a contract action is generally confined to the remedies found in the contract, the damages sought in the Fourth Cause of Action would not be recoverable in any event. *See Niagara Mohawk Power* at 664 (citing *Board of Educ. v. Sargent, Webster, Crenshaw & Folley*, 71 N.Y.2d 21, 29, 523 N.Y.S.2d 475, 517 N.E.2d 1360 (1987)), and discussion *infra.*

**2.** Both plaintiff and defendant are merchants as

## IV. THE SECOND CAUSE OF ACTION

■ Plaintiff's Second Cause of Action for Breach of Contract alleges damages in the form of lost profits plus expenses related to the cost of cutting and shipping the defective goods. Complaint ¶¶ 22–31. The form "sales contracts" sent to Suzy Phillips by Coville specifically bar claims of any kind for goods after they have been cut or changed from the original state, and also bar any claims for consequential damages including lost profits. *See* Defendant's Ex. A, ¶ 11; *supra* p. 3. Nevertheless, plaintiff argues that these damage-limiting terms constituted a material alteration of the parties' original agreement and thus never became a part of their contract.

■ In New York, the Uniform Commercial Code ("U.C.C.") Article 2 governs disputes concerning the sale of goods between merchants. *Auburn Steel Co., Inc. v. Westinghouse Elec. Corp.*, 158 A.D.2d 938, 551 N.Y.S.2d 101 (4th Dep't 1990).[2] Under the U.C.C. resolution of the "battle of the forms," Suzy Phillips' acceptance and use of the goods ordered constitutes a definite and seasonable expression of acceptance of the sales contract. Because Suzy Phillips never objected to or proposed additional terms to the forms sent by Coville, the fact that it never signed these forms is irrelevant. Its behavior is the equivalent of assent to these terms. *See* U.C.C. § 2–207, Official Comment 6 ("If no answer is received within a reasonable time after additional terms are proposed, it is both fair and commercially sound to assume that their inclusion has been assented to").

An exception to this rule exists where additional terms materially alter a contract. Such terms do not become part of a contract unless they have been specifically assented to. U.C.C. Law § 2–207(2). An explanation of the phrase "materially alter" as relevant for these purposes was provided by Judge Posner in the case of *Union Carbide Corp. v. Oscar Mayer Foods Corp.*, 947 F.2d 1333, 1336 (7th Cir.1991):

An alteration is material if consent to it cannot be presumed. That is our gloss; the cases more commonly speak of 'unrea-

that term is defined in the U.C.C. § 2–104.

sonable surprise,' . . . But it comes to the same thing. What is expectable, hence unsurprising, is okay; what is unexpected, hence surprising, is not. Not infrequently the test is said to be 'surprise or hardship,' . . . but this appears to be a misreading of Official Comment 4 to UCC § 207. The comment offers example of 'typical clauses which would normally "materially alter" the contract and so result in surprise or hardship if incorporated without express awareness by the other party.' Hardship is a consequence, not a criterion. (Surprise can be either.) You cannot walk away from a contract that you can fairly be deemed to have agreed to, merely because performance turns out to be a hardship for you, unless you can squeeze yourself into the impossibility defense or some related doctrine of excuse.

(internal citations omitted). Thus, Official Comment 4 to U.C.C. § 2–207 provides examples of clauses which materially alter a contract, all of which have in common that they significantly alter standard industry practice and thus could surprise a buyer who would not have expected to be operating under such terms. Similarly, the examples given in Official Comment 5, of clauses which are not considered material alterations of a contract, are terms which would tend not to unreasonably surprise the other party.

Among the examples given in Comment 5 of clauses which are not material alterations of a contract are clauses which limit a remedy in a reasonable manner. In this example, the Comment makes reference to the U.C.C. §§ 2–718 and 2–719. U.C.C. § 2–719 provides that an agreement may limit or alter the measure of damages recoverable, "as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts," as Coville did here. Section 2–719 also specifically provides that consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. A test for determining whether a limitation of liabilities clause constitutes a material alteration of a contract was set out by the court in *In re Chateaugay Corp.*, 162 B.R. 949, 958 (S.D.N.Y.1994):

> Between merchants, where U.C.C. § 2–207(2)(a) and 2(c) do not apply,[3] the limitations on remedies or damages become part of the parties' agreement, unless the non-assenting party proves that (1) its inclusion constitutes unreasonable surprise in light of the parties' prior dealings, industry custom or inconspicuousness of the term, or (2) the clause is unconscionable or (3) the limitation fails of its essential purpose.

(citing cases).

■ Limitation of consequential damages where a loss is commercial is ordinarily not considered unconscionable under New York law, in accordance with the underlying policy of the U.C.C. that parties to an agreement are "left free to shape their remedies to their particular requirements and reasonable agreements limiting or modifying remedies are to be given effect." *AT & T v. New York City Human Resources Admin.*, 833 F.Supp. 962, 988 (S.D.N.Y.1993) (quoting U.C.C. § 2–719, Official Comment 1). *See also Bakal v. Burroughs Corp.*, 74 Misc.2d 202, 204, 343 N.Y.S.2d 541, 544 (N.Y.Sup.Ct.1972); *Auburn Steel Co., Inc. v. Westinghouse Elec. Corp.*, 158 A.D.2d 938, 551 N.Y.S.2d 101, 101 (4th Dep't 1990). Plaintiff has not presented any evidence to suggest that the clauses contained in the forms sent by Coville are unconscionable. *See McNally Wellman Co. v. New York Elec. & Gas Corp.*, 63 F.3d 1188, 1198 (2d Cir.1995) ("an assessment of unconscionability 'generally requires a showing that the contract was both procedurally and substantively unconscionable when made— *i.e.*, some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'") (quoting *Gillman v. Chase Manhattan Bank*, 73 N.Y.2d 1, 537 N.Y.S.2d 787, 534 N.E.2d 824 (1988)). Plaintiff also has not presented

---

**3.** Section 2–207(2)(a) provides that additional terms are to be construed as proposals for addition to the contract, which between merchants become part of the contract, unless the offer expressly limits acceptance to the terms of the offer. Section 2–207(2)(c) provides that such terms do not become part of the contract if notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

any evidence that the limitation here fails of its essential purpose. *See McNally Wellman* at 1197 ("a limitation on incidental or consequential damages remains valid even if an exclusive remedy fails."). Thus, under the test set forth above, unless the damage limiting clause caused Suzy Phillips "unreasonable surprise," it should be incorporated into the parties' contract.

Because where the trade practice is to include a standard limitation of liabilities clause, it would be difficult for a party to show surprise, in such circumstances, a damage-limiting clause is not considered a material alteration of a contract. *See Transamerica Oil Corp. v. Lynes, Inc.*, 723 F.2d 758, 765–66 (10th Cir.1983):

> Absent an express term to the contrary, ... a term constituting usage of trade is a binding term of the agreement. J. White & R. Summers, *Uniform Commercial Code* 99 (2d ed. 1980). Usage of trade may add an exclusive remedy to an agreement. *Posttape Assoc. v. Eastman Kodak Co.*, 537 F.2d 751, 756–57 (3d Cir.1976). Thus, if it constitutes usage of trade, a limited remedy for breach of warranty is enforceable if it is not unconscionable and does not fail of its essential purpose.

*See also Dale R. Horning Co. v. Falconer Glass Indus.*, 730 F.Supp. 962, 966 (S.D.Ind. 1990) 966 ("if the buyer is generally aware that such limitations are imposed in the industry, the buyer cannot be heard to complain of surprise in any individual transaction"). That the limitation of damages clause in dispute in this case is standard in contracts between garment manufacturers and textile converters is evidenced by the Worth Street Textile Market Rules, an "historic and traditional basis of textile practices which have been recognized as the standard code of procedure and trade customs applicable to the purchase, sale and use of textile and allied lines." Worth Street Textile Market Rules, App. to Defendant's Memo. of Law p. 2. *See also id.* p. 3–6, "Standard Textile Salesnote." Plaintiff has not argued, nor presented any evidence, that the Worth Street Rules do not constitute standard industry practice.

The evidence presented by defendant of the standard trade practice, together with the evidence that all of the parties' dealings were on the same terms, and the lack of any evidence that the terms at issue were inconspicuous, compels the conclusion that these terms did not work a material alteration of the parties' agreement. Because they did not materially alter the parties' agreement, the limitation of damages clauses in the forms sent to Suzy Phillips by Coville are incorporated into the parties' contracts. Plaintiff's allegation that the clauses at issue caused it "unreasonable surprise," Nicolella Aff. ¶ 17, is an attempt to depict a legal conclusion as a factual assertion, and is insufficient to create a material issue of fact so as to merit denying defendant's motion for summary judgment.

The cases cited by plaintiff in support of its position are distinguishable. In *Step-Saver Data Systems, Inc. v. Wyse Tech.*, 939 F.2d 91 (3d Cir.1991), express warranties were included within the parties' original agreement, and the written disclaimers printed on the goods' package "differed substantially from those previously discussed by the parties." In addition, the plaintiff had specifically objected to those disclaimers. *Id.* at 105. These facts supported the Third Circuit's conclusion that the disclaimer printed on the product's package altered the distribution of risk between the parties and constituted a material alteration of the contract. In *First Sec. Mortgage Co. v. Goldmark Plastics Compounds, Inc.*, 862 F.Supp. 918, 934 (E.D.N.Y.1994), Judge Spatt held that the defendant could not be bound by the waiver of warranty and limitation of damages in the form faxed to the defendant by the plaintiff, where the plaintiff was unable to prove that the defendant "ever received or even saw ... the relevant language in the invoices at issue." The holding in *St. Charles Cable TV v. Eagle Comtronics, Inc.*, 687 F.Supp. 820 (S.D.N.Y.1988), *aff'd*, 895 F.2d 1410 (2d Cir.1989), that the parties' contract included the limitation on warranty stated in the acknowledgment form sent to the plaintiffs by defendant, because plaintiffs could not claim surprise or hardship of those terms, is directly contrary to Suzy Phillips' position. *Charles J. King Inc. v. Barge LM–*

*10,* 518 F.Supp. 1117 (S.D.N.Y.1981) also fails to support plaintiff's case.

Because the limitation of liability clause in the form sent to Suzy Phillips by Coville does not materially alter the terms of the contract between the parties, it forms a valid and enforceable part of that contract. Thus, under the parties' contracts, plaintiff's damages are limited to the cost of the goods and cannot include a claim for lost profits or consequential damages. Plaintiff's Second Cause of Action for Breach of Contract is dismissed.

## V. *REMAND*

 Plaintiff's withdrawal of its Third Cause of Action and the Court's dismissal of the Second and Fourth Causes of Action leave remaining in this case only the First Cause of Action. This claim alleges damages in the amount of the cost of the damaged goods, or $29,402.18, *see* Complaint ¶ 21. The case therefore no longer satisfies the amount in controversy requirement for diversity jurisdiction under 28 U.S.C. § 1332. However, this Court has authority to continue to exercise jurisdiction over plaintiff's claim under the doctrine of supplemental jurisdiction. *See* 28 U.S.C. 1367(c)(3); 1 Moore's Federal Practice ¶ 67 n. 7 ("[s]upplemental jurisdiction remedies any lack of an independent basis of subject matter jurisdiction, including ... the failure to satisfy any jurisdictional amount requirement."). *See also Shanaghan v. Cahill,* 58 F.3d 106, 109 (4th Cir.1995) ("[§ 1367] is not limited to cases where the original basis for federal jurisdiction was a federal question. It clearly provides for the operation of supplemental jurisdiction in diversity cases."); *Klepper v. First American Bank,* 916 F.2d 337, 341 (6th Cir.1990); *Keles v. Yale Univ.,* Dkt. No. 95–7600, 1996 WL 115329 (2d Cir. March 14, 1996) (citing *Shanaghan v. Cahill);* 14A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Civil 2d § 3702.

 Trial courts enjoy "wide latitude" in exercising their discretion to retain jurisdiction under the doctrine of supplemental jurisdiction. *See Shanaghan* at 110 (citing *Noble v. White,* 996 F.2d 797 (5th Cir.1993)).

Relevant factors to be considered include principles of judicial economy, convenience, and fairness to the litigants. *Purgess v. Sharrock,* 33 F.3d 134, 138 (2d Cir.1994); *see also Growth Horizons, Inc. v. Delaware County,* 983 F.2d 1277 (3d Cir.1993) (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). Applying these factors to the facts of this case leads the Court to exercise supplemental jurisdiction over plaintiff's remaining claim. In ruling on this motion, the Court has spent a considerable amount of time familiarizing itself with the facts and circumstances of this case, and to have the case begin anew in another court would constitute a waste of judicial resources. In addition, plaintiff's remaining cause of action is a simple breach of contract claim, and it would be both unfair and inconvenient to the parties to have to reinitiate proceedings for this simple claim. Defendant's motion for remand therefore is denied.

## VI. *SANCTIONS AND ATTORNEYS' FEES*

Finally, defendant asks that this Court impose sanctions and attorneys' fees on plaintiff. Defendant claims sanctions are appropriate because plaintiff's complaint seeks more damages than could in good faith be claimed. Fed.R.Civ.P. 11(b) provides in relevant part that by presenting to the court a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. Given plaintiff's willingness to provide the court with a more complete accounting of its damages, sanctions are not appropriate at this time.

 Defendant also asks the Court to compel the plaintiff to pay attorneys' fees for the cost of bringing this motion. The burden of counsel fees for an action generally rests on each party, and a prevailing litigant is ordinarily not entitled to collect reasonable

attorneys' fees from the loser. *Nemeroff v. Abelson,* 620 F.2d 339, 348 (2d Cir.1980). Fees can be shifted to the prevailing party under various exceptions to this rule, such as explicit statutory provisions, or the common benefit exception, neither of which are relevant here. *Id.* at 348. Fees may also be shifted under a court's "exception power" where "an action has been commenced or conducted 'in bad faith, vexatiously, wantonly or for oppressive reasons.'" *Id.* (citing cases). However, for the court's "exception power" to come into play, there must be "clear evidence" that the claims are "entirely without color and made for reasons of harassment or delay or for other improper purposes." *Browning Debenture Holders' Comm. v. DASA Corp.,* 560 F.2d 1078, 1088 (2d Cir.1977). The mere fact that an action is without merit does not amount to bad faith such as will warrant an award of attorneys' fees as costs. *Miracle Mile Assoc. v. City of Rochester,* 617 F.2d 18, 21 (2d Cir.1980). There is no indication that plaintiff's claims were made in bad faith, and reward of attorneys' fees to the defendant therefore is inappropriate. *See Gianna Enterprises v. Miss World (Jersey) Ltd.,* 551 F.Supp. 1348 (S.D.N.Y.1982).

### CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment dismissing plaintiff's Second and Fourth Causes of Action is granted. Plaintiff has withdrawn its Third Cause of Action. Because the Court exercises supplemental jurisdiction over the First Cause of Action, defendant's motion for remand is denied.

SO ORDERED.