**Esther SMITH, Individually And On Behalf Of All Others Similarly Situated, Plaintiff–Appellee,**

v.

**LOCAL 819 I.B.T. PENSION PLAN; The Board of Trustees of the Local 819 I.B.T. Pension Plan, Defendants–Third–Party Plaintiffs–Appellants.**

**The Board of Trustees of Teamsters Local 819 Pension Fund, Individually And On Behalf Of The Teamsters Local 819 Pension Fund, Third–Party Plaintiff–Appellant,**

v.

**Connecticut General Life Insurance Company, Third–Party Defendant–Appellee.**

**Docket No. 01–7583.**

United States Court of Appeals, Second Circuit.

Argued Feb. 28, 2002.

Decided May 20, 2002.

Charles Pergue, New York, NY, (Larry Cary, Vladeck, Waldman, Elias & Engelhard, P.C., on the brief), for Defendants–Third–Party–Plaintiffs–Appellants and Third–Party Plaintiff-Appellant.

Thomas A. Martin, New York, N.Y. (Steven R. Shapiro, Putney, Twombly, Hall & Hirson, LLP, on the brief), for Third–Party Defendant–Appellee.

Before KEARSE, JACOBS and KEITH, Circuit Judges.*

JACOBS, Circuit Judge.

Local 819 I.B.T. Pension Plan and its Board of Trustees (the "Trustees") are defendants in a putative class action brought by plan participant Esther Smith, alleging that the plan has been non-compliant with the Employment Retirement Income Security Act of 1974 ("ERISA") since 1976 (and non-compliant with state law as well), and that these deficiencies were uncorrected or insufficiently cured by a 1997 revision made by the Plan and its Trustees in response to earlier litigation. The Plan and its Trustees appeal from the judgment of the United States District Court for the Southern District of New York (McKenna, J.), dismissing their third-party complaint for indemnification and/or contribution against Connecticut General Life Insurance ("Connecticut General"). It is alleged (or conceded) that Connecticut General designed the plan in 1966, administered it until 1995 (exercising sole discretion over its assets), reformed it on October 1, 1976 to bring it into compliance with ERISA, reformed it again in 1986, and represented to the Trustees that it complied with all applicable laws and regulations, including ERISA.

The district court dismissed the third-party complaint for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the ground that the class action complaint cited the 1997 reformation (in which Connecticut General played no part) and alleged that it fails to remedy the plan's deficiencies.

On appeal, the Trustees argue that the district court misconstrued the class action as limited to the insufficiency of the 1997 reformation undertaken by the Trustees, and therefore as unconnected to Connecticut General's drafting, redrafting, and administration of the plan in prior years. The Trustees attribute the error to the district court's failure to consider that [i] the noncompliance existed since 1976, and [ii] Smith seeks relief retroactive to that year. Connecticut General challenges the district court's certification of its interlocutory ruling as a final judgment, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

Preliminarily, we hold that the district court did not abuse its discretion by certifying its ruling as a final judgment.[1] As to the merits, we conclude that the Trustees sufficiently state ERISA and state claims for indemnity and contribution because: [1] Smith seeks relief retroactive to the time when Connecticut General administered the plan; and [2] notwithstanding the 1997 reformation, which is not as a matter of law a superseding event, deficiencies in the plan attributable to Connecticut General may have proximately caused (under a negligence theory) or "enabled" (under an ERISA theory, 29 U.S.C. § 1105) any deficiencies in the reformation.

## I

In 1990, plan participant Jennie DeVito initiated suit against the Trustees alleging that the plan was "back-loaded," that is, designed in violation of ERISA to provide excessively low rates of accrual in an employee's early years of employment. *DeVito v. Pension Plan of Local 819 I.B.T.*

---

* The Honorable Damon J. Keith, Senior Judge of the United States Court of Appeals for the Sixth Circuit, sitting by designation.

1. On appeal, Connecticut General briefs a number of defenses that were not presented to the district court or that the district court did not address: statute of limitations, ERISA preemption of state claims, etc. Because the district court did not rule on these questions, we decline to reach them.

*Pension Fund,* 975 F.Supp. 258, 269–70 (S.D.N.Y.1997); *see also* 29 U.S.C. § 1054. The Trustees served a third-party complaint seeking indemnification and contribution from Connecticut General as the entity that developed and administered the plan.

In 1995, while the *DeVito* action was pending, the Trustees altered their contractual relationship with Connecticut General. For $4.6 million in consideration paid by the Plan, Connecticut General agreed to the termination of its contract, except to the extent that Connecticut General remained liable under the plan "for providing an annuity to participants receiving a benefit as of June 7, 1995." *Smith v. Local 819 I.B.T. Pension Plan,* 2001 WL 55733, at *1 (S.D.N.Y. Jan.23, 2001) (internal quotation marks omitted).

DeVito prevailed in 1997, and the Trustees were ordered "to reform the Plan consistent with the requirements of ERISA retroactive to October 1, 1976." *DeVito,* 975 F.Supp. at 270. The Trustees reformed the plan in 1997, settled their suit with DeVito in 1999, and settled their third-party action against Connecticut General in 2000 (Connecticut General having made no admission of third-party liability).

In 2000, plan participant Esther Smith commenced the present class action on behalf of herself and similarly situated plan participants. Her complaint sought injunctive and equitable relief "to reform the plan in accordance with ERISA's minimum standards *retroactive* to October 1, 1976," alleging, specifically, that the plan remains "back-loaded" (and thereby noncompliant with ERISA), because the 1997 reformation did "nothing to change the rate of accrual of the normal retirement benefit." Joint App. at 9, 12–13 ("J.A.") (emphasis added). In short, Smith maintained that the Trustees' 1997 reformation

of the benefit formula failed to correct the formula's previously-adjudicated noncompliance with ERISA.

The Trustees then filed their third-party complaint against Connecticut General, alleging that: [1] under ERISA, Connecticut General owes indemnification or contribution because Connecticut General was a fiduciary of the Plan, *see* 29 U.S.C. §§ 1002(21)(A), 1104, 1105; and [2] even if it was not a fiduciary, Connecticut General owes indemnification or contribution under state law for breach of contract, or of other express and implied duties. Specifically, the third-party complaint seeks indemnification for the plan's noncompliance with ERISA resulting from Connecticut General's administration of the plan between 1976 and 1995, and contribution to the extent Connecticut General's breach caused any subsequent noncompliance by the Trustees.

The district court granted Connecticut General's motion to dismiss the third-party complaint for failure to state a claim, on the ground that

> it was the Trustees who modified the benefit formula in May of 1997, not [Connecticut General]. Without any facts linking [Connecticut General] to the May Reformation, considering the May Reformation is the basis of Smith's complaint, the Court cannot find any basis for sustaining the third-party action against [Connecticut General].

*Smith,* 2001 WL 55733, at *2.

The Trustees moved for an order, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, certifying the interlocutory ruling as a final judgment from which the Trustees could appeal. The district court granted the Rule 54(b) motion, citing "an increased risk" otherwise that there would be "a duplicative action between third-party plaintiffs and third-party de-

fendant in the future." *Smith v. Local 819 I.B.T. Pension Plan*, No. 00 Civ. 0781 (Aug. 16, 2001).

## II

We review for abuse of discretion a district court's decision to certify an order as a final judgment (under Fed. R.Civ.P. 54(b)). *See Maurizio v. Goldsmith*, 230 F.3d 518, 520 (2d Cir.2000). Notwithstanding the "historic federal policy against piecemeal appeals," judicial efficiency may require certification in the "infrequent harsh case [where] there exists some danger of hardship or injustice through delay which would be alleviated by immediate appeal." *Hogan v. Consolidated Rail Corp.*, 961 F.2d 1021, 1025 (2d Cir.1992) (internal citations and quotation marks omitted). Accordingly, Rule 54(b) "authorizes certification of an interlocutory appeal where there is no just cause for delay." *Maurizio*, 230 F.3d at 520.

The district court's discretionary certification was appropriate. Certification in this case avoids [i] potentially duplicative litigation, and [ii] an insufficiency of Plan funds to support a possible judgment.

## III

We review *de novo* the district court's dismissal of the third-party complaint for failure to state a claim. *See Castellano v. City of New York*, 142 F.3d 58, 66 (2d Cir.1998).[2]

Dismissal for failure to state a claim is proper where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir.1999) (internal citation and quotation marks omitted). All factual allegations in the complaint are therefore presumed to be true. *See Zinermon v. Burch*, 494 U.S. 113, 118, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990); *Charles W. v. Maul*, 214 F.3d 350, 356 (2d Cir.2000). And all reasonable inferences are drawn in favor of the plaintiff. *See* Fed.R.Civ.P. 12(b)(6); *EEOC v. Staten Island Sav. Bank*, 207 F.3d 144, 148 (2d Cir.2000). However, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Gebhardt v. Allspect, Inc.*, 96 F.Supp.2d 331, 333 (S.D.N.Y.2000) (internal citation and quotation marks omitted).

### A. ERISA Claims

Congress created no explicit cause of action for contribution or indemnity. *Cf.*, 29 U.S.C. § 1105 (providing only for liability for breach of co-fiduciary). However, our reading of ERISA is informed by Congress's intent "to develop a federal common law of rights and obligations ... guided by principles of trust law." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110–11, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) (internal quotation marks omitted). "[R]ather than explicitly enumerating *all*

**2.** At oral argument, Connecticut General urged us to review the Trustees' appeal under an abuse of discretion standard, arguing that the district court's ruling was akin to a denial of a motion to implead a third-party defendant under Rule 14(a) of the Federal Rules of Civil Procedure. The law of impleader does not bear upon this dismissal for failure to state a claim. *See Bank of India v. Trendi Sportswear, Inc.*, 239 F.3d 428, 437–38 (2d Cir.2000) (holding that a motion to implead presents a procedural question "distinct" from the issue of whether a third-party complaint alleges a substantive claim). In any event, the Trustees filed their third-party complaint within ten days of serving their answer, and were therefore entitled to do so without leave. *See* Fed.R.Civ.P. 14(a) ("The third-party plaintiff need not obtain leave to make the service if the third-party plaintiff files the third-party complaint not later than 10 days after serving the original answer.").

of the powers and duties of trustees and other fiduciaries, Congress invoked the common law of trusts to define the general scope of their authority and responsibility." *Varity Corp. v. Howe*, 516 U.S. 489, 496, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) (internal citations and quotation marks omitted) (emphasis in original); *see also Chemung Canal Trust Co. v. Sovran Bank/Maryland*, 939 F.2d 12, 16 (2d Cir. 1991) (citing *Firestone*, 489 U.S. at 110, 109 S.Ct. 948).

Courts applying trust law principles have implied federal common law rights between defaulting fiduciaries. *See, e.g., Chemung*, 939 F.2d at 16 (holding that under ERISA a breaching fiduciary is entitled to contribution protection traditionally granted fiduciaries under equitable provisions of trust law); *Free v. Briody*, 732 F.2d 1331, 1337 (7th Cir.1984) (holding that breaching fiduciary is entitled to indemnification under trust law principles).

The first disputed question is whether the third-party complaint sufficiently alleges that Connecticut General was a fiduciary. ERISA Section 3(21)(A) provides that a party is a fiduciary with respect to a plan only to the extent that

> (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

The Trustees' complaint alleges that Connecticut General breached its fiduciary duty to the Plan and to the Trustees because

> Connecticut General exercised discretionary authority and control with respect to the administration of the Fund and the management and disposition of the Fund's assets.... Third-party plaintiffs relied on Connecticut General's representations, either expressed or implied, that all versions of the Plan drafted by Connecticut General were in full compliance with all applicable laws and regulations, including ERISA, that the Plan was required to satisfy.

J.A. at 53–54. Although Connecticut General denies that it possessed discretionary authority over the plan, we accept the Trustees' allegation as true for the purposes of a motion to dismiss, as did the district court. *Smith*, 2001 WL 55733, at *1 ("[Until 1995, Connecticut General] exercis[ed] exclusive discretion with respect to the management and investment of the Plan's assets.").

■ The next disputed question is whether the pleadings sufficiently allege that Connecticut General violated this fiduciary duty. ERISA Section 404 provides that a fiduciary owes a duty of reasonable care:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and ... with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

29 U.S.C. § 1104(a)(1)(B). And ERISA Section 505 provides in relevant part that a fiduciary is liable if the fiduciary's failure to exercise reasonable care leads to a co-fiduciary's breach:

[A] fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan ... if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach.

29 U.S.C. § 1105(a)(2).

Smith's complaint seeks damages retroactive to 1976 on the theory that the plan is back-loaded in violation of ERISA.[3] And it is alleged in the Trustees' third-party complaint (or conceded by Connecticut General) that: [1] in 1976 Connecticut General designed the formula that is alleged by Smith to have caused the illegal back-loading; [2] between 1976 and 1995, Connecticut General maintained, redesigned and exercised discretionary control over the formula; and [3] the Trustees relied on warranties of ERISA compliance made by Connecticut General while it was a fiduciary. These allegations are enough to state a claim for indemnification for the period between 1976 and 1995.

The allegations also state a claim for contribution, though that is a closer question. The Trustees allege that "Connecticut General has breached its fiduciary duty to the Plan," citing §§ 1104 and 1105. Among the inferences that fairly could be drawn from these allegations and citations is that Connecticut General's non-compliant design of the plan did not lend itself to retroactive correction; specifically, that Connecticut General's fiduciary breach of its duty of reasonable care "enabled" the Trustees' subsequent failure to correct the preexisting default. *See* 29 U.S.C.

§§ 1104(a)(1)(B), 1105(a)(2). Therefore, it was error for the district court to focus on the 1997 reformation in isolation, especially since Smith's underlying complaint charges the Trustees with failing to correct the very same noncompliant rate of accrual initially developed by Connecticut General.

## B. *State–Law Claims*

 No fiduciary duty need be alleged in order to state a claim for indemnification under state law. A state-law claim for indemnity may rest upon (*inter alia*) breach of a quasi-contractual relationship or warranty. *See McDermott v. City of New York*, 50 N.Y.2d 211, 216, 428 N.Y.S.2d 643, 406 N.E.2d 460 (1980). And a state-law claim for contribution may arise where the defendant and a third party both caused the same injury—albeit nonconcurrently or under alternative theories of causation. *See Board of Educ. of the Hudson City Sch. Dist. v. Sargent, Webster, Crenshaw & Folley*, 71 N.Y.2d 21, 27, 523 N.Y.S.2d 475, 517 N.E.2d 1360 (1987); *see also* N.Y. C.P.L.R. § 1401 (McKinney 2001) (codifying *Dole v. Dow Chem. Co.*, 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288 (1972)).

 The Trustees' third-party complaint alleges that Connecticut General is liable under state law for "breach of duty, [and] breach of contract or implied obligation to third-party plaintiffs." J.A. at 57. Under these theories, the Trustees could shift their liability to Connecticut General: [1] under indemnity, because (during a portion of the period for which Smith seeks damages) Connecticut General may have breached its contractual obligations to the Plan by developing

---

**3.** Smith's claim for retroactive relief is supported under ERISA Section 204, which provides that "[t]he accrued benefit of a participant under a plan may not be decreased by an amendment of the plan." ERISA section 204,

29 U.S.C. § 1054(g)(1). Therefore, no argument can be made that the 1997 reformation completely undid everything that came before. *See Amato v. Western Union Int'l, Inc.,* 773 F.2d 1402, 1407–14 (2d Cir.1985).

and applying a back-loaded formula, while misrepresenting that the formula was compliant; or [2] under contribution, because the formula was negligently developed and administered in a way that impaired the Plan's ability to effect a full correction in 1997.

As indicated earlier, the indemnity theory may be more plausible, but the contribution theory may be viable as well; even if the alleged failure of the 1997 reformation to correct the illegal back-loading reflects negligence on the part of the Trustees, their "actions will not break the necessary chain of causation where th[ose actions] are 'a normal or foreseeable consequence of the situation created by [Connecticut General's] negligence.'" *Stagl v. Delta Airlines, Inc.*, 52 F.3d 463, 473 (2d Cir.1995) (quoting *Derdiarian v. Felix Contracting Corp.*, 51 N.Y.2d 308, 315, 434 N.Y.S.2d 166, 414 N.E.2d 666 (1980)).

### CONCLUSION

The judgment of the district court is reversed and the case is remanded for further proceedings not inconsistent with this decision.